**Marcia WELCH, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**BOARD OF DIRECTORS OF WILDWOOD GOLF CLUB, Individually and in their official capacities, and the Board of Directors of Stone Lodge, Inc., Individually and in their official capacities, Defendants.**

Civ. A. No. 90–1154.

United States District Court,
W.D. Pennsylvania.

Feb. 17, 1993.

Deborah Luteran Iwanyshyn, Joseph W Hernandez–Duebas, Roman Iwanyshyn, Allison Park, PA, for plaintiff.

Laura A. Candris, Howard D. Schwartz, Ann M. Foulkes, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for defendants.

OPINION

COHILL, District Judge.

Presently before the court are: (1) Plaintiffs' Motion for Class Certification, (2) Plaintiffs' Motion to Strike Dehors the Record Material in Defendants' Appendix to Defendants' Brief Opposing Class Certification, (3) Plaintiffs' Second and Third Motions to Compel, and (4) Defendants Motion for Protective Order. For the reasons stated herein, we will grant Plaintiffs' Motion for Class Certification in part and deny it in part, deny Plaintiffs' Motion to Strike, deny Plaintiffs' Motions to Compel, and grant in part and deny in part Defendants' Motion for a Protective Order.

BACKGROUND

This is an action for declaratory and injunctive relief and damages, brought pursuant to 42 U.S.C. §§ 1985(3) and 1983, and the Pennsylvania Human Relations Act. We have jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(1) and (a)(3).

Nominal plaintiff Marcia Welch is a former member of the Wildwood Golf Club in Allison Park, Pennsylvania, who sought to have her husband's membership transferred to her after their divorce. The defendants include the Board of Directors of the Wildwood Golf Club, a Pennsylvania corporation, and the Board of Directors of Stone Lodge, Inc., also a Pennsylvania corporation, which owns the Club real estate. Club memberships at Wildwood Golf Club ("Wildwood" or the "Club") are apparently broken down into the following classes: Class A, Class 2–A, Class B, Senior, Intermediate B, Intermediate A, Class C and Class D.

Marcia Welch and her ex-husband Thomas C. Welch both held a Class A membership. Plaintiffs allege that under the Club's by-laws, either gender may be Class 2–A members, and are therefore eligible to become a Class A member, however when a married couple applies for membership, the application and the membership is in the husband's name. Plaintiffs also allege that under the Club rules, only males can continue to be Class A members upon the death or divorce of the other spouse. Upon the nominal plaintiff's divorce, Wildwood refused to grant the transfer of membership and stock certificates from Mr. Welch to Ms. Welch, which both ex-spouses desired. Apparently the Family Division of the Court of Common Pleas of Allegheny County ordered Wildwood to transfer the membership from Thomas Welch to plaintiff Welch's name. The Board of Directors refused to do so and told Ms. Welch that effective March 31, 1990 she was no longer a member of Wildwood.

It is further alleged that the 345 female spousal Class A members cannot golf on the weekends prior to 2:00 p.m., as is true of children golfers, unless accompanied by a male. Ms. Welch, a sales manager for a multi-national corporation, claims that her business relationships with clients have been harmed by the Club's policy of limiting women's tee off times and because she cannot conduct business in the "all male" 19th Hole bar and grill at Wildwood.

The nominal plaintiff has characterized the proposed class in a number of ways. Her Motion for Class Certification states very broadly that the class consists of "all past, present and future female members of all classes of Wildwood Golf Club." Motion for Class Certification ¶ 1. On the other hand, nominal plaintiff alleges that this action is brought on behalf of "all past and present female Class A members of Wildwood Golf Club, all future members, all Class 2–A members, Class B members, Senior members, Intermediate Class members, Class C members and Class D members." Amended Complaint ¶ 11. Plaintiffs' Amended complaint defines the class as "all female Class A members as well as other classes of female members who have

been discriminated against on the basis of sex in the operation of the transfer of Class A memberships by reason of death or divorce from the other spousal Class A member, and who have been discriminated against on the basis of sex in the overall operation of the Club." Amended Complaint ¶ 1.

For the purposes of this motion we will assume that the proposed class is as defined in the motion for class certification, "all past, present and future female members of all classes of Wildwood Golf Club."

## CLASS CERTIFICATION

Plaintiffs move for class certification under Fed.R.Civ.P. 23(b)(3), and define the class as "all past, present and future female members of all classes of Wildwood Golf Club."

To be certified as a class action under Rule 23(b)(3), plaintiffs must satisfy each of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974). The party seeking to certify the class action has the burden of proving that the requirements of Rule 23(b)(3) have been met. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974). Furthermore, the interests of justice require that in a doubtful case, courts should err in favor of allowing the class certification. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

### A. Rule 23(a)

Rule 23(a) provides:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1. Numerosity

■ To satisfy numerosity, the class must be so numerous that joinder of all members is impracticable. *Weiss v. York Hosp.*, 745 F.2d 786, 807–808 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). "Impractical," however, does not mean impossible. 7A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1762 (2d ed. 1986). The Third Circuit has generally held that the numerosity requirement is met if the proposed class exceeds 100 members. *Safran v. United Steelworkers of America*, 132 F.R.D. 397 (W.D.Pa.1989).

■ Plaintiffs assert that the proposed class consists of over 250 female Class A Family Members of the Club, an undetermined number of past members who were spouses of male Class A members, all future female spouses of male Class A members, and females who currently hold Class A memberships. Defendant objects to this characterization of the class because the plaintiffs' class action allegations fail to explicitly mention the inclusion of female spouses of members in the class. Defendant argues that there are only five Class A female members, bringing the total female members to 21 for all classes. It is difficult to discern from the record before us whether Class A Family members were considered to be Class–A members. We hold nonetheless that the spouses of Class A members can reasonably be included in plaintiffs' definition of the class "all past, present and future female members of all classes of Wildwood Golf Club."

Defendants also object to the inclusion of future members of the class to satisfy the numerosity requirement, citing *Gurmankin v. Costanzo*, 626 F.2d 1132, 1133–36 (3d Cir.1980), which held that numerosity could not be met by characterizing the proposed class as "future victims" of the alleged unlawful activity.

There are purportedly over 250 female Class A members of Wildwood today. We hold that the numerosity requirement has been met without considering any future members of Wildwood's various classes. But we decline to include in the definition of the class "future female members of all classes of Wildwood Golf Club."

### 2. Commonality

■ Commonality requires that there be questions of law or fact common to the class, although not all questions of law and fact raised need be in common. *Weiss*, 745 F.2d at 808–809. Plaintiffs claim that there are various questions of law and fact common to the putative class, including whether the Wildwood constitution and by-laws were legally amended so as to adversely affect the transfer rights of female members, whether Family Class A memberships inure to be benefit of female members (past and present), the rights of female spousal Family Class A members and female Family Class A members, and whether female Family Class A members were discriminated against on the basis of sex at Wildwood. The defendants do not contest the commonality element.

We conclude that the commonality element has been established.

### 3. Typicality

■ Typicality exists when the legal or factual positions of the class representatives are sufficiently similar to the legal or factual positions of the other class members. *Eisenberg*, 766 F.2d at 786. "Typical" is not identical. *Id.* The typicality requirement overlaps with the commonality requirement and the requirement of fair and adequate representation. *Id.*

■ The nominal plaintiff asserts that her claims are typical of the entire proposed class in that she alleges a pattern of conduct by the defendants which is typical of the treatment of all class members. This alleged pattern of conduct derives from the Wildwood constitution and by-laws, which specifically govern the transferability of membership in the face of death or divorce, tee-off times and other sports schedules, all of which plaintiffs allege discriminate against the female members of the Club.

Defendants challenge the typicality element on a number of grounds. First, they argue that Ms. Welch has failed to show that any other women have sought and

been denied the transfer of an ex-husband's Wildwood membership or Stone Lodge stock. Second, defendants claim that Ms. Welch has not shown that other women have objected to alleged sex discrimination in the overall operation of Wildwood and its Club rules.

■ The purpose of the typicality rule is to ensure adequate representation. 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1764 (2d ed. 1986). Plaintiffs will satisfy the typicality requirement *if their claims stem from the same event or course of conduct and are based on the same legal theory* that gives rise to the claims of other class members. *Paskel v. Heckler*, 99 F.R.D. 80, 83–84 (E.D.Pa.1983). We agree with the plaintiffs that the alleged unlawful activity derives from the by-laws and constitution of the Club, and that other female members of Wildwood may have claims based on sex discrimination. Of course, "[a] motion for class action certification ... is not the proper occasion for a minihearing on the merits." *Safran*, 132 F.R.D. at 400.

Finally, defendants contend that typicality is not met due to Ms. Welch's inadequate representation since her claim may in fact be in conflict with the interests of the class she proposes to represent, because in 1989 the membership voted against her proposed amendment to the by-laws to allow for transfers of membership between spouses. We recognize that the rejection of the proposed by-laws which would have allowed inter-spousal transfers of memberships and stock ownership is but a fraction of the overall claim of sex discrimination in this case.

Nonetheless, defendants call our attention to *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) in which class certification was denied on the basis that plaintiffs were inadequate class representatives, or atypical. The major reason for the denial of class certification was that plaintiffs failed to move for class certification until after their presentation of evidence at trial, which focused primarily on individual claims for damages rather than class-wide relief. *Id.* at 405, 97 S.Ct. at 1897. It is true, as defendants argue, that the Court also considered the fact that a majority of the members of the proposed class had voted to reject the very same outcome demanded in plaintiffs' complaint. *Id.* But in *Rodriguez*, a large majority of the members who rejected the proposal were members of the protected class (Latinos and Blacks), thus "negating any possibility that the vote was controlled by white persons or by line drivers." *Id.* at n. 4. In the case before us, the all-male Board of Directors recommended that the membership reject the proposal, and then after the election allegedly failed to announced the vote count, as allegedly required by the by-laws.

We accordingly hold that the typicality element has been met.

### 4. Fair and Adequate Representation

■ The fourth and final requirement of Rule 23(a) Fed.R.Civ.P. is that there be fair and adequate representation. Adequate representation requires: (a) the plaintiff must not have interests antagonistic to those of the class, and (b) the plaintiffs' attorney must be qualified, experienced, and competent to conduct the proposed litigation. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The burden is on the defendants to prove that the representation will be inadequate. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

#### a. *Plaintiffs' Interests*

■ Defendants first argue that the nominal plaintiff will not be able to fairly and adequately protect the interests of the class because, they assert, she is not a member of the class she seeks to represent in that she is a former spouse of a former member. This argument again raises the factual question of whom should be considered Club members under Wildwood's membership rules. We hold that Ms. Welch, a former Class A member, is a member of the class of "all past and pres-

ent female members of all classes of Wildwood Golf Club." Defendants have not met their burden here.

Second, defendants contend that courts disfavor proposed class representatives who are past class members when the proposed class consists of past and present members. Ms. Welch is not a past member of the *proposed class;* rather, she is a past member of the Club.

Third, defendants also argue that Ms. Welch is not concerned with the Club's viability and contractual relationships with its members, thus rendering her an inadequate class representative. We agree that a representative cannot adequately protect the class if his or her interests are antagonistic to those he or she purports to represent. However, at this preliminary stage of the case, we believe that the chance of "antagonistic interests between the plaintiff[ ] and absent class members is too speculative to preclude class certification on the basis of inadequate representation." *Safran*, 132 F.R.D. at 404. Should the need arise to resolve conflicts regarding proof of damages, we can later form subclasses after liability has been established. Fed. R.Civ.P. 23(c)(4). At this point in the proceeding, we hold that Ms. Welch does not have interests antagonistic to those of the class. They are merely antagonistic to the defendants.

#### b. *Plaintiffs' Attorney*

 Plaintiffs' counsel· of record are Deborah Luteran Iwanyshyn, J.W. Hernandez–Cuebas ·and Roman Iwanyshyn of Iwanyshyn & Associates, P.C. in Allison Park, Pennsylvania. Unfortunately, the nominal plaintiff has not provided any evidence to support her claim that her attorneys are adequate. Defendants argue that counsel for the plaintiffs lack experience in class action civil rights claims and have been incompetent in their pursuit of the present claim and plaintiffs' corresponding state court lawsuit. Defendants explain that in the state claim, plaintiffs' counsel failed to file the claim with the Pennsylvania Human Relations Commission before filing the claim in state court. They also describe how plaintiffs' counsel failed to formally file for class certification until nine months after filing the original complaint, and dropped some of the original causes of action in the amended complaint.

Such inadequacies do not render plaintiffs' counsel unqualified, inexperienced or generally unable to conduct the litigation. Counsel for the plaintiffs may have made some mistakes in the state court claim, but these are not "serious errors," *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 634 (N.D.Ill.1987) nor do they rise to the level of "total incompetency." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415–16 (9th Cir.1985), *cert. denied* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). Delay in filing for class certification does not justify denial of such certification if the filing was only nine months after the complaint was filed. We accordingly hold that plaintiffs' counsel is sufficiently qualified to conduct the proposed litigation.

### B. Rule 23(b)(3)

Having met the requirements of Rule 23(a), plaintiffs must also satisfy the requirements of Rule 23(b).

Plaintiffs seek certification of a class action under Rule 23(b)(3), which provides in pertinent part:

> [a]n action may be maintained as a class action if ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
>
> · · ·

#### 1. Predominance

 The court must first determine that common questions of law or fact pertaining to the class predominate over individual questions. Fed.R.Civ.P. 23(b)(3). It is not, however, essential that common questions of law or fact be identical. *Safran*, 132 F.R.D. at 401.

Plaintiffs argue that the main issues to be determined in this case are: (1) whether

the Wildwood constitution and by-laws were legally amended so as to adversely affect the transfer rights of female members, (2) whether Family Class A memberships inure to the benefit of female members (past and present), (3) the status of rights of female spousal Family Class A members and female Family Class A members, and (4) whether female Family Class A members were discriminated against on the basis of sex at Wildwood. Defendants do not contest the predominance issue.

The membership rights of all female Class A members of Wildwood derive from the Club's constitution and by-laws, the legitimacy of which is at question in this lawsuit. We therefore conclude that the common questions of law and fact pertaining to the class predominate over individual questions.

### 2. Superiority

■ Additionally, the court must determine that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3). To determine superiority, the court must consider several factors: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3).

Requiring the class members to bring separate law suits would waste judicial resources, limit access to the courts, and create a problem of inconsistent judgments. There are potentially hundreds of members of the proposed class. Defendants do not contest the superiority requirement. Thus, we conclude that this litigation should be concentrated under the same case. We hold that a class action will be superior to other available methods for the fair and efficient adjudication of this controversy.

### CONCLUSION

We hold that plaintiffs have met the test for class certification pursuant to Fed. R.Civ.P. 23(a) and (b)(3). Therefore, we will grant plaintiffs' motion for class certification, modifying the class so as to be defined as "all past and present female members of all classes of Wildwood Golf Club."

### MOTION TO STRIKE

■ The second issue before us at present is Plaintiffs' Motion to Strike Dehors the Record Material Provided in Defendants' Appendix in Support of Brief in Opposition to Plaintiffs' Motion for Class Certification (the "Appendix"). The Appendix includes eight exhibits, six of which are declarations of individuals associated with Wildwood and Stone Lodge regarding the class certification issue. In their affidavits these Wildwood members and officers allege that Ms. Welch is alone in her dispute with Wildwood and thus, we should deny class certification. Plaintiffs protest the inclusion of such declarations on various grounds, including witness competency, inappropriateness of legal conclusions stated within the declarations, relevancy, factual accuracy, the inclusion of non-class related testimony, and finally, the prejudicial nature of the statements, particularly the inclusion of the state court complaint allegations.

■ Federal Rules of Civil Procedure provides:

"[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Fed.R.Civ.P. 12(f). Generally, a motion to strike is not the proper device for placing actual merits of pleadings in issue. *Zappala v. Hub Foods, Inc.*, 683 F.Supp. 127 (W.D.Pa.1988). Motions to strike are not

authorized or proper ways to strike affidavits and are viewed with disfavor. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 2d ed. (1990). We have considerable discretion in disposing of motions to strike on the basis of redundant, impertinent, immaterial, or scandalous matter. *Id.* at § 1382.

We do not believe that defendants' declarations are redundant, immaterial, impertinent or scandalous matter. Accordingly, we will deny plaintiffs' motion.

## MOTIONS TO COMPEL

A party may discover any information "relevant to the subject matter involved in the pending action" that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action." *Id.* (emphasis added).

On June 11, 1991, this Court entered an Order granting in part Plaintiffs' (first) Motion to Compel, directing defendants to produce for inspection and copying all minutes of the meetings of the Board of Directors of Wildwood Golf Club and Stone Lodge, Inc. and all files relating to membership from 1981 to the date of the Order. Defendants have provided such records, and plaintiffs do not contest their general compliance.

## SECOND MOTION TO COMPEL

■ However, the minutes of meetings held on January 18, 1990 and March 26, 1990 (months prior to the filing of plaintiffs' complaint) have had certain portions redacted. Obstructing the text are the words "discussion with legal counsel deleted," which were placed on the documents by the defendants' counsel in order to protect allegedly privileged attorney-client information. These omissions have prompted plaintiffs to file a Second Motion to Compel.

Plaintiffs argue that this information is not protected by the attorney-client privilege because the referenced attorney is a Wildwood member and volunteer member of the Legal Committee at Wildwood. Additionally, plaintiffs argue that the presence of then manager of Wildwood, James Reukauf, at these meetings destroys the attorney-client privilege. Finally, plaintiffs contend that the privilege does not apply to these minutes because the minutes of the Board of Directors meetings are mailed to each Board member.

In response to plaintiffs' assertions, defendants agree that the attorney, Andrew Kimball, was a member at Wildwood and served on its Legal Committee at the time of said meetings, but explain that Mr. Kimball was retained on a fee basis by the Board regarding the present litigation. The defendants also argue that the presence of Wildwood manager, Mr. Reukauf, does not destroy the attorney-client privilege because he held a confidential, advisory position with the Club. Moreover, according to the defendants, the minutes of these meetings were at all times treated as confidential by the Board and were only mailed to Board members. The defendants have attached declarations from Mr. Kimball and the President of the Board, David Evans, to support their arguments. Defendants argue that these discussions are therefore privileged communications which are not discoverable under Fed.R.Civ.P. 26(b)(1).

We will deny plaintiffs' second motion. The defendants' counsel has submitted signed pleadings to the Court averring that the withheld documents are documents subject to the attorney-client privilege. It appears to the Court that defendant is properly asserting the attorney-client privilege because the Wildwood Board was seeking legal advice in connection with litigation threatened by the nominal plaintiff in this suit.

## THIRD MOTION TO COMPEL

■ Plaintiffs have also filed a Third Motion to Compel, in part alleging that the defendants have failed to comply with our Order dated July 8, 1991, which plaintiffs believe granted their Second Motion to Compel, the subject of the present opinion. We agree with the defendants that, contrary to plaintiffs' assertions, this Order

did not grant Plaintiffs' Second Motion to Compel, but rather ordered the defendants to *respond* to the second motion on or before July 15, 1991. We will therefore deny the Third Motion to Compel as to the production of the Board minutes for January 18, 1990 and March 26, 1990.

Plaintiffs' Third Motion also addresses two instances of redaction which were not included in the second motion. Apparently the minutes of Stone Lodge, Inc. dated November 8, 1991 and January 24, 1991 had also been redacted and the words "discussions re: Welch litigation" replaced the original text of the minutes. According to defendants' brief, an untouched copy of the November 8, 1991 Stone Lodge Board of Directors minutes has since been furnished to plaintiffs, and we will treat the third motion as moot regarding the minutes of that day.

As to the remaining dispute over the redacted January 24, 1991 Stone Lodge minutes, defendants again argue that said portions are subject to the attorney-client privilege in that they addressed settlement negotiations in the present lawsuit. Defendants provide a declaration of John Richards, the President of the Board of Directors of Stone Lodge, Inc. supporting this allegation.

We hold that the January 24, 1991 minutes of the Stone Lodge Board of Directors meeting are covered by the attorney-client privilege, as discussed *supra*. Accordingly, we shall deny Plaintiffs Motion to Compel as to the minutes of that meeting.

Finally, the Third Motion to Compel also seeks an order directing the defendants to produce minutes of dozens of Wildwood and Stone Lodge Boards of Directors meetings, dated from 1983 to 1991, which were not produced to them under our June 11, 1991 Order.

On September 27, 1991, we ordered defendants to show cause why the missing Board minutes cannot be produced. Defendants acknowledged that they have not produced these documents, but defend their non-compliance on a number of grounds: (1) a small portion of the sought-after minutes are dated incorrectly by the plaintiffs, (2) no meetings were held on certain dates as alleged, (3) the remainder of the minutes are missing from Wildwood's and Stone Lodge's records, and (4) no such records were ever created for the Stone Lodge Board meetings. The defendants allege that on several occasions they have contacted all Wildwood Board members in a diligent effort to locate the minutes. They have also submitted several declarations from persons involved in the search for the missing minutes.

The Court believes that under theses circumstances, it is best to trust, as officers of the Court, the able counselors in this action to comply in good faith with the discovery rules. We caution, however, that should it later be determined that the documents in dispute were withheld without proper justification, the court will not hesitate to impose sanctions.

## MOTION FOR PROTECTIVE ORDER

■ Defendants have filed a Motion for Protective Order Limiting the Use and Disclosure of Information Obtained in Discovery. This motion was filed after several alleged attempts to come to an amicable agreement between the parties. Defendants worry that some of the requested Wildwood and Stone Lodge Board minutes contain information which pertains to sensitive financial, health, employment, disciplinary and private issues about Club members. Apparently Ms. Welch and her counsel have sought and obtained media coverage of this lawsuit, including participation in a radio talk show and granting an interview which was printed in a national newspaper article. *See* Exhibits A, B, C, and D, Defendants' Reply to Plaintiffs' Brief Opposing Continuation of the Confidentiality Order.

On June 13, 1991 we entered an interim Confidentiality Order requiring that the parties "keep confidential and not disclose any information gained in the course of discovery until the court issues a final ruling" on the Motion for Protective Order. Plaintiffs have since filed a motion in opposition and both sides have briefed their respective positions.

Rule 26(c) provides, in pertinent part, that:

> [u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Defendants argue that if information obtained through discovery concerning the Club's operations and its membership is publicly disclosed, the members' constitutional rights of associational privacy will be irreparably damaged. Plaintiffs argue that defendants have failed to show good cause, that substantial harm would be caused by the denial of the Protective Order, and that conclusory statements are insufficient to support defendants' burden of proof.

We have discretion as to how to safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26(b). Fed.R.Civ.P. 26(c); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (1970). We believe that defendants have met their burden and shown good cause for the protective order, as required by Rule 26, but will narrow the defendants' request. Public disclosure of information obtained through discovery in this case has a high potential for embarrassment or harm to Wildwood's members. Defendants have asked for a Protective Order which mandates that "the parties shall not use or disclose *any* documents or information obtained through discovery in this action for any purpose except the prosecution and defense of this litigation ..." We will order that the proposed Protective Order is overly broad. Instead, we hold that the parties to this suit may not use or disseminate information regarding individual members' health, financial and other personal problems. Nor may they disclose disciplinary action taken against members. Plaintiffs will not suffer any prejudice by the granting of the protective order because they will still be able to prosecute their case. However, the parties and their counsel may disclose any information or documents to the extent reasonably necessary for the prosecution or defense of this action, or to the extent that disclosure is required by law or legal process or discovery rules.

We also wish to note that we do not look with favor on counsel or parties to litigation who attempt to use the news media to further or enhance their positions with respect to litigation.

Our decision to grant the protective order should not be construed to comment upon whether Wildwood qualifies as a public or private club.

An appropriate Order will issue.

## ORDER

AND NOW, to-wit, this 17th day of February, 1993, upon careful consideration of Plaintiffs' Motion for Class Certification, Plaintiffs' Motion to Strike Dehors the Record Material in Defendants' Appendix to Defendants' Brief Opposing Class Certification, Plaintiffs' Second and Third Motions to Compel and Defendants Motion for Protective Order, and the corresponding briefs filed on these matters, it is hereby ORDERED, ADJUDGED and DECREED THAT:

1. Plaintiff's Motion for Class Certification be and hereby is GRANTED in part so that the class shall be defined as "all past and present female members of all classes of Wildwood Golf Club," and DENIED in part so that the class definition excludes "future female members of all classes of Wildwood Golf Club";

2. Plaintiffs' Motion to Strike Dehors the Record Material in Defendants' Appendix to Defendants' Brief Opposing Class Certification be and hereby is DENIED;

3. Plaintiffs' Second and Third Motions to Compel be and hereby are DENIED; and

4. Defendants' Motion for Protective Order be and hereby is GRANTED in part and denied in part in accordance with our Opinion. Defendants shall draft an appropriate Protective Order for the Court to sign.

IT IS FURTHER ORDERED that all non-class certification discovery shall commence immediately and that the pretrial order shall be amended according to the following schedule:

Discovery ends: June 18, 1993

Plaintiff's Pretrial Statement Due: July 9, 1993

Defendant's Pretrial Statement Due: July 30, 1993

Stipulation of Counsel Due: August 20, 1993